Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311
Email:    mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIKHAIL GERSHZON on behalf of himself and all others similarly situated,** | **CASE NO.:**    3:23-cv-5444 |
| **Plaintiff,** | **CLASS ACTION** |
| **v.** | |
| **ZOA ENERGY, LLC** | |
| **Defendant.** | |

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1    Plaintiff Mikhail Gershzon ("Plaintiff"), individually and on behalf of himself and all others

2    similarly situated, brings this class action against Defendant ZOA Energy, LLC ("ZOA" or

3    "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation

4    of counsel, alleges as follows:

5                                    **INTRODUCTION**

6

7    1.    This is a proposed class action on behalf of a California and nationwide class

8    (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated

9    with the advertising, labeling, and sale of ZOA Energy drinks ("Drinks" or "Products").[1]



---

[1] Class Products include all flavors of ZOA Energy Drinks.

2.      In 2021, the global energy drink market was valued at nearly $85 billion and is predicted to double by 2030.[2]

3.      While the broader energy drink market, dominated by well-known brands such as Red Bull, Monster, and Rockstar, has been around for decades, current growth in the segment is being driven by a shift towards healthier options as consumers become more conscious of the negative health effects associated with sugary, caffeinated beverages. [3]

4.      "Consumers looking for an energy boost are becoming more discerning, with those drinkers seeking out 'cleaner' options and simpler recipes containing fewer and more natural ingredients. The so-called 'clean label' trend that's had an impact on other food and beverage categories has started to shape product development and branding strategies in energy drinks, too." [4]

5.      In its 2022 Global Soft Drinks Performance and Outlook report, Global Data identified a "strong positive impact" on future value sales of energy drinks from consumers switching to clean-label and natural products. *Id.* "Clean label is meant to cut through the obfuscation and provide truth and transparency. That's what clean energy provides." *Id.* Featured heavily in the demand for clean labels are the "lack of use of preservatives…" *Id.* "Surveys continue

---

[2] Straits Research, Energy Drinks Market Size is projected to reach USD 176.15 Billion by 2030, growing at a CAGR of 8.47%: Straits Research, September 7, 2023 https://www.globenewswire.com/en/news-release/2023/09/07/2739472/0/en/Energy-Drinks-Market-Size-is-projected-to-reach-USD-176-15-Billion-by-2030-growing-at-a-CAGR-of-8-47-Straits-Research.html#:~:text=The%20Global%20Energy%20Drinks%20Market,8.47%25%20from%202022%20to%202030. (Last visited October 10, 2023).

[3] ZOA Energy: Dwayne Johnson's All-Natural Boost for Body and Mind, Xtalks, May 3, 2023. Available at https://xtalks.com/zoa-energy-dwayne-johnsons-all-natural-boost-for-body-and-mind-3353/#:~:text=Unlike%20many%20other%20energy%20drinks,looking%20to%20avoid%20these%20ingredients. (Last visited October 10, 2023).

[4] *Health and wellness to give jolt to energy drinks*, Just Drinks, August 31, 2023. Available at https://www.just-drinks.com/features/health-and-wellness-to-give-jolt-to-energy-drinks/?cf-view. (Last visited October 10, 2023).

to show the rising popularity of clean label claims. "No preservatives" were the top clean label claim in two surveys."[5]

6.      Recognizing the fact that it was marketing to a growing cohort of health-conscious consumers, ZOA fully embraced the concept of "clean label," promising products with a "cleaner energy formula" free from "preservatives," "artificial flavors" and "synthetic colors." [6]



---

[5] *No preservatives' stands out among clean label claims*, Food Business News, July 30, 2019. Available at https://www.foodbusinessnews.net/articles/14178-no-preservatives-stands-out-among-clean-label-claims. Last visited October 10, 2023.

[6] https://zoaenergy.com/pages/why-zoa. Last visited October 23, 2023.

7.      Unfortunately, ZOA's claim that its Products contain "**0 Preservatives**" is false, as each contains a significant amount of the preservative citric acid.



8.      Despite unequivocally and boldly claiming that their Products contain **"0 Preservatives,"** the inclusion of citric acid belies this affirmation, rendering it false, misleading, and in violation of the law.

9.      Throughout the applicable class periods, Defendant has falsely represented the true nature of its Products and as a result of this false and misleading labeling, was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California and the United States.

10.     Plaintiff alleges Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* California Civil Code § 1750, *et seq*., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

**JURISDICTION AND VENUE**

11.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Mikhail Gershzon is a resident of San Francisco, California. Defendant ZOA Energy, LLC is headquartered in Tampa, Florida and incorporated in Delaware. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

**PARTIES**

13.     Plaintiff Gershzon is a resident of San Francisco, California.

14.     Mr. Gershzon purchased Defendant's Wild Orange Product within the applicable class periods, including but not limited to a purchase in or around June 2023 from Walmart.

15.     Mr. Gershzon believed the representations on the Products' labels were accurate, particularly in that they did not contain preservatives.

16.     Mr. Gershzon believed that Defendant lawfully marketed and sold the Products.

17.     Mr. Gershzon relied on Defendant's labeling and was misled thereby.

18.     Mr. Gershzon would not have purchased the Products, or would have purchased the Products on different terms had he known the truth about their contents.

19.     Mr. Gershzon was injured in fact and lost money as a result of Defendant's improper conduct.

20.     If Mr. Gershzon had occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, he would purchase Defendant's Products in the future.

21.     Defendant ZOA Energy, LLC,  manufactures, markets, and sells a line of energy drinks. ZOA reported more than $100 million in sales in 2022 and 138% year-over-year growth.[7] The Drinks are sold across a variety of retail segments including supermarkets, convenience stores, and mass merchants.

## GENERAL ALLEGATIONS

### A.     CITRIC ACID IS A PRESERVATIVE

22.     The federal Food Drug & Cosmetic Act  ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).  "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention." 21 C.F.R. §101.22(j).

23.     Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and rancidity; and (3) as a chelating agent binding metal ions in certain foods to prevent oxidation.

24.     Citric acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration

---

[7] https://ir.molsoncoors.com/news/news-details/2023/Molson-Coors-Beverage-Company-Expands-Partnership-With-ZOA-Energy-Through-Increased-Investment/default.aspx

("FDA") unequivocally identifies "citric acid" as a preservative.[8] The sentiment is echoed in the Substances Added to Food database maintained by the FDA in which the principal technical effects of citric acid are identified as preservative functions.[9] Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such.  "The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[10]

25.     Citric acid's primary use is as a preservative, despite potentially having additional functions.[11]  It functions as a preservative in the Products, regardless of Defendants' subjective purpose(s) for adding it to the Products, and regardless of any other functions citric acid may perform. This is even more the case here where Defendant has not declared a contrary purpose for adding citric acid.

---

[8] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited October 2, 2023)

[9] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited October 2, 2023)

[10] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited October 6, 2023).

[11] *See Citric Acid: One Of The Most Important Preservatives In The World*, FBC Industries, Inc. Available at  https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/. (Last visited October 6, 2023).

### B. CONSUMER DEMAND FOR PRESERVATIVE FREE PRODUCTS

26.     The clean label movement has been called "the largest shift in American food habits since World War II."[12] The term encompasses many things, but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[13]

27.     By representing its Products have "0 Preservatives," Defendant seeks to capitalize on consumer preference for clean label products. Indeed, "[foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[14] Indeed, "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, preservative free ranks "[a]mong the top claims… [and is] deem[ed] most important." *Id.*

28.     In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most popular claim to be 'no artificial ingredients.' This was followed closely by 'no preservatives'…."[15]

---

[12] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited October 6, 2023).

[13] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited October 6, 2023).

[14] *See, Free-from Food Trends US 2015 Report,* Mintel, Available at  https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited October 10, 2023).

[15] How the Clean-Label Megatrend Is Changing the Food Ingredients Landscape, LEK  Volume XXI, Issue 74, November 18, 2019. Available at https://www.lek.com/insights/ei/clean-label-food-ingredients. Last visited October 23, 2023.



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

29.     By failing to properly label its Products, ZOA has misled and deceived consumers in violation of the law.

30.     As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

## ECONOMIC INJURY

31.     Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

32.     Plaintiff saw and relied on Defendant's misleading labeling of its Products.

33.     Plaintiff believed that the purchased Products contained no preservatives.

34.     Plaintiff believed that the Products were lawfully marketed and sold.

35.     In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid a price premium.

36.     As a result of hid reliance on Defendant's misrepresentations, Plaintiff received Products containing a type of ingredient which Defendant represented the Product would not contain.

37.     Plaintiff received Products that were unlawfully marketed and sold.

38.     Plaintiff lost money and thereby suffered injury as he would not have purchased these Products and/or paid as much for them absent the misrepresentation.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

39.     Defendant knows that the claim the Products are free of preservatives is material to a consumer's purchasing decision.

40.     Plaintiff altered his position to his detriment and suffered damages in an amount equal to the amounts he paid for the Products he purchased, and/or in additional amounts attributable to the deception.

41.     By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

42.     Plaintiff, however, would be willing to purchase Products again in the future should he be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of himself and on behalf of classes of all others similarly situated consumers defined as follows:

      a.  **National**: All persons in the United States who purchased Class Products in the United States during the Class Period.

      b.  **California:** All persons in California who purchased the Class Products in California during the Class Period.

      c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

44.     Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

45.     Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

46.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

47.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

48.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a.  Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

    b.  Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

    c.  Whether Defendant participated in and pursued the common course of conduct complained of herein;

    d.  Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

    e.  Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.* (the "UCL");

    f.  Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.* (the "FAL");

    g.  Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.* (the "CLRA");

    h.  Whether Defendant should be enjoined from continuing the above-described practices;

    i.  Whether Plaintiff and members of the Class are entitled to declaratory relief; and

    j.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

49.     Plaintiff's claims are typical of the claims of the Class, in that Plaintiff was a consumer who purchased Defendant's Products. Plaintiff is no different in any relevant respect from any other Class Member who purchased the Products, and the relief sought is common to the Class.

50.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and his counsel will adequately protect the interests of the Class.

51.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

52.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

53.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

# FIRST CAUSE OF ACTION
## (Breach of Express Warranty)
### Cal. Com. Code §2313

54.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

55.    Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased contained no preservatives.

56.    The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

57.    Plaintiff and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

58.    Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

59.    Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

60.    Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**

**("Unlawful" Business Practices in Violation of**

**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*.)**

61.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

62.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

63.     A business act or practice is "unlawful" if it violates any established state or federal law.

64.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

      a.   21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

      b.   21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

      c.   21 CFR §101.22 requiring proper disclosure of chemical preservatives;

      d.   21 U.S.C. §§331 and 333, which prohibits the introduction of misbranded foods into interstate commerce.

65.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §109875 *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code §110765; *See, also* Cal. Health & Safety Code §110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of

1938 as the food labeling regulations of California. Cal. Health & Safety Code §§110100(a), 110665, 110670.

66.     As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. §343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

67.     Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660, and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

68.     Defendant's identical conduct that violates the Sherman Law, also violates FDCA §403(a)(1), 21 U.S.C. §343(a)(1), which declares food misbranded under federal law if its "labeling is false and misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA.

69.     Plaintiff's UCL unlawful claim is also independently based on the underlying CLRA and express warranty violations.

70.     By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

71.     Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

1
2
3

**THIRD CAUSE OF ACTION**

**("Unfair" Business Practices in Violation of**

**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)**

4      72.      Plaintiff incorporates each and every allegation contained in the paragraphs above as
5   if restated herein.

6      73.      The UCL defines unfair business competition to include any "unlawful, unfair or
7   fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal.
8   Bus. Prof. Code §17200.

9      74.      A business act or practice is "unfair" under the Unfair Competition Law if the reasons,
10  justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the
11  alleged victim.

12      75.      Defendant has violated, and continues to violate, the "unfair" prong of the UCL through
13  its misleading description of the Products. The gravity of the harm to members of the Class resulting
14  from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of
15  Defendant for engaging in such deceptive acts and practices. By committing the acts and practices
16  alleged above, Defendant engaged, and continues to engage, in unfair business practices within the
17  meaning of California Business and Professions Code §§17200, *et seq*.

18      76.      Through its unfair acts and practices, Defendant obtained, and continues to unfairly
19  obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this
20  Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the
21  profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair
22  Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be
23  irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

24
25
26
27
28

**FOURTH CAUSE OF ACTION**

**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

77.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

78.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

79.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

80.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they principally contained their characterizing ingredients.

81.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

82.    Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FIFTH CAUSE OF ACTION**

**(False Advertising in Violation of**
**California Business & Professions Code §§ l7500,** *et seq.***)**

83.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

84.    Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

85.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

86.    The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

87.    Through their deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

88.    Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act,
### California Civil Code §§ 1750, *et seq.*)

89.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

90.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA").

91.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

92.     The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

93.     Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a.   §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b.   §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c.   § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

94.     Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

95.     The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's

misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

96.     Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

97.     Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendants' Products will be damaged by their acts and practices in the same way as Plaintiff and Class Members.

98.     Plaintiff served a CLRA demand pursuant to Civil Code §1782, via U.S. Certified Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If Defendants do not accede to the demands in the letter within 30 days, Plaintiff will amend this complaint to seek damages as provided under Civil Code §1780.

## SEVENTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)
### By Plaintiffs on Behalf of the Nationwide Class

99.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

100.     Defendant's conduct in enticing Plaintiff and the Class to purchase Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

101.      Defendant took monies from Plaintiff and the Class for these Products and has been unjustly enriched at the expense of Plaintiff and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

102.   It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

103.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**<u>PRAYER FOR RELIEF</u>**

THEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.   An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.   Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.   Compensatory damages for Causes of Action for which they are available.

D.   Other statutory penalties for Causes of Action for which they are available.

E.   Punitive Damages for Causes of Action for which they are available.

F.   A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G.   An Order awarding Plaintiff his costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.   An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein.

I.   Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: October 23, 2023                Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311
Email:    mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*