**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk
*pnwlaw@aol.com*
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:   (401) 861-6064

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIKHAIL GERSHZON on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ZOA ENERGY, LLC**<br><br>**Defendant.** | **CASE NO.: 3:23-cv-5444-JD**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 20, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br><br>Hon. Judge James Donato |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on June 20, 2025 at 10:00 AM, in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable James Donato, Plaintiff Mikhail Gershzon, individually and on behalf of all others similarly situated, will, and hereby does, move this Court, pursuant to Federal Rule of Civil Procedure 23, for entry of an Order:

(1)    Preliminarily approving the proposed Settlement with Defendant ZOA Energy, LLC ("ZOA"), as fully described in the Class Action Settlement Agreement and Release;

(2)    Conditionally certifying the proposed Settlement Class;

(3)    Approving the proposed form and manner of Notice to the Settlement Class;

(4)    Approving the proposed selection of Kroll Settlement Administration LLC as the Settlement Administrator;

(5)    Appointing Plaintiff Mikhail Gershzon as the Settlement Class Representative;

(6)    Appointing Michael D. Braun of Kuzyk Law, LLP and Peter N. Wasylyk of the Law Offices of Peter N. Wasylyk as Settlement Class Counsel; and

(7)    Setting a hearing date for Final Approval of the Settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Michael D. Braun and the exhibits attached thereto; (4) the Declaration of Christie K. Reed of Kroll Notice Media Solutions; (5) the records, pleadings, and papers filed in this Action; and (6) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1

2      For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for

3   Preliminary Approval of Class Action Settlement and enter the proposed Order.

4

5

6   DATED: May 9, 2025                        Respectfully submitted,

7

8

9                                            Michael D. Braun
                                             **KUZYK LAW, LLP**
10

11                                           Peter N. Wasylyk
                                             **LAW OFFICES OF PETER N. WASYLYK**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.       INTRODUCTION ................................................................................................1

II.      THE PROPOSED SETTLEMENT ...................................................................2

A.    The Settlement Class ..........................................................................................2

B.    Released Claims ..................................................................................................2

C.    Class Relief .........................................................................................................3

    1.    Settlement Fund ......................................................................................3

    2.    Programmatic Relief ..............................................................................4

D.    Dissemination of Notice to the Class .................................................................4

E.    Opportunity to Object or Opt Out ......................................................................6

F.    Distribution of Settlement Funds to Class Members .........................................6

G.    Class Administrator and Expected Administration Costs ..................................7

H.    Service Awards to the Class Representative ......................................................7

I.    Attorneys' Fees and Costs Award to Class Counsel ..........................................8

III.     PROPOSED SCHEDULE ..................................................................................8

IV.      ARGUMENT .......................................................................................................9

A.    The Settlement Satisfies the Hanlon Factors ...................................................10

    1.    The strength of Plaintiff's case; The risk, expense, complexity, and
          likely duration of further litigation;  The risk of maintaining class
          action status; The amount offered in settlement (*Hanlon* 1-4) ................10

    2.    The Extent of Discovery Completed and The Stage of The
          Proceedings; ...........................................................................................11

    3.    The Experience and Views of Counsel ...................................................12

B.    The Settlement Satisfies the Mandates of Fed. R. Civ. P. 23(e)(2) .......................13

    1.    Class Representative and Class Counsel have adequately
          represented the Class ..............................................................................14

    2.    The Settlement Agreement was negotiated at arm's length ......................14

    3.    The relief provided for the class is adequate ............................................15

    4.    The proposed Settlement treats class members equitably ..........................16

C.    Conditional Certification of The Proposed Settlement Class is Appropriate
Under Fed.R.Civ. P. 23 ................................................................................16

1.    The Settlement Class is sufficiently numerous ..........................................16

2.    There are questions of law and fact that are common to the
Settlement Class for settlement purposes ..................................................17

3.    Plaintiff's claims are typical of the Settlement Class ...............................18

4.    Plaintiff and Plaintiff's Counsel will adequately represent the
interests of the Settlement Class ................................................................18

5.    The Class Satisfies the Requirements of Fed.R.Civ.P. 23(b) ...................19

D.    The Settlement Meets the Northern District of California Procedural
Guidance For Class Action Settlements ................................................................21

V.    **CONCLUSION** ........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) .............14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).......................................................9, 16, 18

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)...........................................................................17

*Campbell v. Facebook, Inc.* 951 F.3d 1106 (9th Cir. 2020) ............................................................13

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)......................................5, 9, 15

*Eisen v. Porsche Cars North American, Inc.*, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014)....11, 13

*Evans v. Linden Rsch., Inc.*, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) .....................................5

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .............................................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...........................................9, 17, 18, 20

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) .......................................................................3

*Hubbard v. RCM Techs. (USA), Inc.*, 2020 WL 6149694 (N.D. Cal. Oct. 20, 2020) ...................16

*Hurtado v. Rainbow Disposal Co.*, 2019 U.S. Dist. LEXIS 70062
    (C.D. Cal. Apr. 22, 2019)........................................................................................................18

*In re Anthem, Inc., Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018).......................................3

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .........................................................................17

*In re Employee Benefit Plans Secs. Litig,* 1993 WL 330595 (D. Minn. June 2, 1993) .................14

*In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .........13

*In re Netflix Privacy Litig.*, 2012 U.S. Dist. LEXIS 93284 (N.D. Cal. July 5, 2012). .................14

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................15

*In re Pac. Enterp. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)...........................................................12

*In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) ..............................................19

*In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993 (N.D. Cal. Jul. 2, 2015)..........11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...........................15

*Johnson v. Serenity Transp., Inc.*, 2021 WL 3081091 (N.D. Cal. July 21, 2021) ..........................9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012).......................................................................9

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) .......................................11

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ........................................................20

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. Jan. 5, 2004)......10, 14

*Opperman v. Kong Techs., Inc.*, 2017 U.S. Dist. LEXIS 104507 (N.D. Cal. July 6, 2017)..........16

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982)..................................................16

*Parra v. Bashas, Inc.*, 536 F.3d 975 (9th Cir. 2008) .....................................................................17

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). ...........................................................................18

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)........................................................13

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006)..................................19

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ............................................17

*S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
    241 F.R.D. 85 (D. Mass. 2007)...........................................................................................17

*Seene v. Kan. City Royals Baseball Corp.*, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023). ...........3

*Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364 (N.D. Cal. Sep. 5, 2008)..............20

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................................................10

*Stewart v. Accurate Background, LLC*, 2024 U.S. Dist. LEXIS 49931
    (N.D. Cal. Mar. 20, 2024)...................................................................................................10

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)................................................................19

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).....................................................10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .....................................................13

*Wakefield v. Wells Fargo & Co.*, 2014 WL 7240339 (N.D. Cal. Dec. 18, 2014) ..........................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..............................................................17

**Rules**

Fed. R. Civ. P. 23(b)(3)........................................................................................18, 20

Fed.R.Civ.P. 23(a)(1) ...............................................................................................16

Fed.R.Civ.P. 23(a)(2) ..........................................................................................16, 17

Fed.R.Civ.P. 23(a)(3) ...............................................................................................17

Fed. R. Civ. P. 23(a)(4) .............................................................................................18

Fed.R.Civ.P. 23(b)(3)...........................................................................................18, 19

Fed.R.Civ.P. 23(e) ..............................................................................................9, 10, 13

**Treatises**

Manual for Complex Litigation, § 21.632 ...................................................................16

*Newberg on Class Actions* § 3.05 ...................................................................13, 14, 16

**Regulations**

Class Action Fairness Act, 28 U.S.C. § 1715 ...............................................................5

1

## I.    INTRODUCTION

2    Plaintiff Mikhail Gershzon ("Plaintiff") respectfully requests preliminary approval of the

3    proposed class action settlement in this matter. Pursuant to the terms of the Settlement, ZOA has

4    agreed to pay $3 million into a common fund ("Settlement Fund") that will be used to pay cash

5    benefits to class members, settlement administration costs, and service and fee awards to the class

6    representatives and class counsel, as approved by the Court.[1]

7    Plaintiff filed a putative class action against ZOA Energy, LLC ("Defendant" or "ZOA") on

8    behalf of a California and nationwide class of consumers seeking redress for Defendant's deceptive

9    practices associated with the advertising, labeling, and sale of ZOA Energy Drinks ("Products").

10    Among its label claims, ZOA promised consumers its beverages contained "0 preservatives." As

11    alleged, ZOA's Energy Drinks were formulated with a preservative system that included significant

12    amounts of the preservatives citric and ascorbic acids, as well as the buffering agents sodium citrate

13    and potassium citrate, rendering the "0 preservative" claim false and misleading.[2]

14    Upon filing the Complaint, the Parties undertook a series of preliminary discussions

15    exploring the possibility of an early resolution. Ultimately the Parties agreed to engage in a formal

16    mediation before the Hon. Dickran Tervizian (ret.) of JAMS. After a full day mediation, and a

17    mediator's proposal, the Parties agreed in principle to resolve the matter. Thereafter, the Parties

18    continued negotiations for several months to finalize the details of the Settlement, which ultimately

19    culminated in the motion now before the Court.

20    For the reasons stated below, the proposed Settlement falls within the range of

21    reasonableness applicable at the preliminary approval stage and Plaintiff respectfully requests the

22    Court grant preliminary approval of the proposed Settlement and conditionally (1) certify the

23

24    ---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the
25    Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA"), filed
concurrently herewith and attached as Exhibit 1 to the Declaration of Michael D. Braun in Support
26    of Preliminary Approval of Class Action Settlement ("Braun Decl.").

27    [2] Concurrently herewith Plaintiff has filed a First Amended Complaint ("FAC") that further details
the substance of his preservative allegations.
28

---

proposed Settlement Class; (2) approve the proposed Notice and Notice program; (3) appoint

Plaintiff Gershzon as the Settlement Class Representative; (4) appoint Michael D. Braun of Kuzy

Law, LLP and Peter N. Wasylyk  of the Law Offices of Peter N. Wasylyk Settlement Class Counsel;

(5) appoint Kroll Settlement Administration, LLC as Settlement Administrator; (6) and set a hearing

date for Final Approval of the Settlement and additional related deadlines in connection therewith.

## II.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The Settlement Class is defined as:

> All persons in the United States who, from March 1, 2021, and Date of
> Preliminary Approval, purchased in the United States, for personal or household
> consumption and not for resale or distribution, one or more Products bearing the
> statement "0 Preservatives" on the label. Excluded from the Settlement Class are:
> (1) the presiding Judge(s) in the Action; (2) any member of those Judge(s)'
> immediate families; (3) Defendant; (4) any of Defendant's subsidiaries, parents,
> affiliates, officers, directors, employees, legal representatives, heirs, successors,
> or assigns; (5) counsel for the Parties; and (6) any persons who timely opt-out of
> the Settlement Class. SA §8 at p. 1

The Settlement Class definition does not differ from the class proposed in the Complaint or

FAC. Class counsel is unaware of any other lawsuit that would be affected by the Settlement.

### B.    Released Claims

If the Court grants Final Approval of the Settlement Agreement, the Settlement Class will be

deemed to have released Defendant from all claims as described in Section 8 therein. SA at p. 14-15.

These claims include the claims in the operative FAC, as well as any claims against Defendant or

certain of its business partners involved in the manufacture, distribution, and sale of ZOA Products

bearing the statement "0 Preservatives" and arising out the allegations made in the FAC, occurring

prior to the date of the Settlement, whether known or unknown. SA §1.29 at p.6.

Courts within the Ninth Circuit have approved releases similar in scope as necessary

consideration for settlement benefits, as such release language is intended to assure defendants that

they will not be required to engage in additional litigation arising out of the same facts, whether

directly as defendants or indirectly, either as respondents in discovery or in connection with a request for contribution or indemnification from the named defendant.

"[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *In re Anthem, Inc., Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Courts in this District have approved a release of claims "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action." *Anthem*, 327 F.R.D. at 327. Similarly, language releasing all claims "known or unknown" has been approved in this District. *See e.g., Seene v. Kan. City Royals Baseball Corp.*, 2023 WL 2699972, at *13 (N.D. Cal. Mar. 29, 2023). Non-defendants may also be identified as released parties. See, e.g., *Smith v. Keurig Green Mountain, Inc*., 2023 WL 2250264, at *3 (N.D. Cal. Feb. 27, 2023) (released parties included "all Persons in the stream of commerce for the labeling, marketing, sale, and/or distribution of the Challenged Products," including "Defendant and its Affiliates, Partner Brands, licensors, suppliers, distributors, wholesalers, and retailers and all of their affiliated and subsidiary companies").

C.    Class Relief

1.    Settlement Fund

The Settlement provides for the creation of a common fund of $3,000,000, which will be used to pay (1) Settlement Class Members' claims; (2) court-approved Notice and Settlement Administration Costs; (3) court-approved Settlement Class Representative Service Awards; and (4) court-approved Settlement Class Counsel Attorneys' Fees and Costs. **SA** §2.1 at p. 7-8. If any funds remain unclaimed or unused, they will be distributed to a cy pres recipient or revert to the Defendant. SA §4.8 p 10-11.

After payment from the Settlement Fund of the Notice and other administrative costs, the Fees and Costs Award, the Service Award, and Settlement Payments, and after donation *cy pres* of Unredeemed Payments, funds that remain in the Settlement Fund ("Unexhausted Amounts") shall be

distributed as follows: If the Unexhausted Amounts total $100,000 or less, 100 percent of the Unexhausted Funds will be donated *cy pres* to the Clean Label Project. If the Unexhausted Funds total more than $100,000, 25 percent of the Unexhausted Amounts, including interest thereon, will be donated *cy pres* to the Clean Label Project, and 75 percent of the Unexhausted Amounts will be returned to ZOA. SA §4.8 p. 10-11.

### 2.    Programmatic Relief

ZOA has adopted and implemented new Product labels that no longer contain the "0 Preservatives" representation. SA Ex. 8 at p.78. As part of the Settlement, ZOA further agreed that it will not revert to a label that includes the statement "0 Preservatives," or words to that effect, unless the Product ingredients change to no longer include chemical preservatives (i.e., citric and ascorbic acid). SA §5.1.1. at p. 11.

### D.    Dissemination of Notice to the Class

Class Members will be notified and provided information about the Settlement through a combination of internet notice, publication notice, emails, a dedicated Settlement Website, and a toll-free telephone helpline. Declaration of Christie K. Reed of Kroll Settlement Administration, LLC in Connection With Preliminary Approval of Settlement ("Reed Decl.") at ¶¶8-33 attached as Exhibit 2 to the Braun Decl.

The Notice Plan will implement a robust on-line noticing campaign that includes on-line display ads across 6000 websites, google search ads (¶24), social media ads (¶25) run on Facebook, YouTube X, and TikTok (¶20) designed to reach an estimated 85% of Settlement Class Members. Reed Decl. ¶6.

Within 14 days of Preliminary Approval the Claims Administrator will establish the Settlement Website. Reed Decl. ¶31; SA Ex. 4 at p. 45. The Settlement Website will facilitate both on-line and physical paper claims. In addition, it will provide information regarding deadlines and links to the Claim Form, Long Form Notice, relevant filings, and contact information for the Settlement Administrator and Class Counsel. Reed Decl. ¶¶8-33.

Within 21 days of the Preliminary Approval Order, the Settlement Administrator will transmit email Notice to putative Class Members for whom ZOA has email addresses. SA Exhibit 4 at p. 45.

Notice of the proposed Settlement will also be provided to the U.S. Attorney General and the attorneys general of each state or territory in which a Settlement Class Member resides, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. Reed Decl. ¶10.

Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements ("NDCA Procedural Guidance"), the Notice also includes: (a) contact information for class counsel to answer questions; (b) the address of Settlement Website; (c) instructions on how to access the case docket via PACER or in person; (d) the date and time of the Final Approval hearing, with a clear statement that the date may change without further notice to the class; and (e) instructions to check the Settlement Website or the Court's PACER site to confirm that the date has not been changed. *See* NDCA Procedural Guidance ¶ 3[3]; Long Form Notice, SA Exhibit 1 at p. 24-35.

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, **575** (9th Cir. 2004). The proposed Notice Plan satisfies these content requirements and is designed to reach 85% of the Settlement Class.  Reed Decl. ¶6. The Settlement Agreement provides direct monetary relief to Class Members through a straightforward claims process and is consistent with those which have been routinely approved by Courts in this District.

---

[3] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

E.    Opportunity to Object or Opt Out

Settlement Class Members who wish to opt out must submit a request to opt-out to the Claims Administrator, postmarked no later than 60 calendar days after the Settlement Notice is disseminated. SA Exhibit 4 at p. 45. The opt-out request must be personally completed and submitted by the Class Member or his or her attorney. Mass or Class opt-outs are not allowed. Within seven (7) calendar days after the opt-out deadline, the Claims Administrator will provide a final list of all requests to opt-out to Class Counsel and ZOA's Counsel.  Those who submit a valid and timely Request to opt-out will not receive settlement benefits or be bound by the Settlement Agreement, while its terms will bind those who do not.  The defendant may terminate the settlement but is not obligated to do so if five hundred or more Class Members opt out. SA §6.4 at p 12.

Settlement Class Members who do not opt out may object to the Settlement by submitting a written objection to the Court postmarked no later than 60 calendar days after the Settlement Notice is disseminated. SA Exhibit 4 at p. 45. Any objection must be submitted by filing it electronically or in person no later than 60 calendar days after the Settlement Notice is disseminated at any location of the United States District Court for the Northern District of California or by mailing it to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102. SA Ex.1 at p. 34.


F.    Distribution of Settlement Funds to Class Members

Class Members will have 90 calendar days after the Settlement Notice is disseminated to submit a claim form. SA Exhibit 4 at p. 45. Settlement Funds will be paid in the form of a check or various digital means to each Settlement Class Member who submits a timely and valid claim by the Claim Submission Deadline. The Claim Form will be available on the Settlement Website and can be submitted online or by mail. The Settlement Administrator will also mail a Claim Form to any Class Member upon request. The Claim Form will be substantially in the form attached as Exhibit 7 to the Settlement Agreement.

If the total value of all Approved Claims exceeds the funds available after allocation or distribution of the Notice and Other Administrative Costs, the Fees and Costs Award, and the Service Award, then the amounts of the Settlement Payments per claim will be reduced pro rata, as necessary, to use all of the funds available for distribution to Class Members. SA §4.5 at p. 10.

### G.    Class Administrator and Expected Administration Costs

The Parties selected Kroll Settlement Administration, LLC ("Kroll") as the proposed Class Administrator. Braun Decl. ¶¶5-6. Prior to selecting Kroll, Plaintiff's Counsel solicited bids from 3 other class claims administrators. *Id*. at ¶5. Defendant solicited a bid from one additional claims administrator. *Id.* at ¶6. Plaintiff's Counsel carefully analyzed the bids provided by each of the 5 firms, ultimately concluding that Kroll's bid was the most competitive. *Id.*

Kroll is a leader in class action settlement administration, currently administering or having administered numerous technology-related matters that involve technology companies, computer hardware, and software. Reed Decl. ¶¶39-40. Kroll implements strict policies for data use and data security to ensure the security and privacy of the Class Members. Reed Decl. ¶¶34-35. Kroll also maintains standard business and liability insurance (¶36) and takes steps to ensure administrative and ethical integrity of its employees, and has in place crisis and risk management policies, physical access controls, and data retention policies. ¶37.

The costs of settlement administration shall be paid out of the Settlement Fund. SA §2.1 at p. 7. The anticipated administrative costs will range from approximately $145,000 to $400,000 depending on the subscription rate of putative Class Members. Braun Decl. ¶7. Plaintiffs' counsel believes such costs to be reasonable in relation to the value of the Settlement. *Id.* at ¶8.

### H.    Service Awards to the Class Representative

At Final Approval, Plaintiffs anticipate applying for a service award not to exceed $7,5000 to be paid from the Settlement Fund, to compensate Mr. Gershzon for his time and effort spent in connection with prosecuting this action and his work on behalf of the Settlement Class. SA §3 at p.

8. Plaintiff has diligently prosecuted this action, a case in which he had a modest personal interest, but which, if the Settlement is approved, will provide significant benefits to the Class. Plaintiff undertook this commitment without any guarantee of recompense. As will be detailed in their forthcoming request for a service award, Plaintiff participated significantly in the prosecution and successful outcome of this action. Braun Decl. ¶13.

I.       Attorneys' Fees and Costs Award to Class Counsel.

At Final Approval, Class Counsel anticipates seeking an award of attorneys' fees and costs of up to one third of the Settlement Fund established by the Settlement. SA §3.1 at p. 8. Class Counsel will **also** request reimbursement of all reasonable and necessary costs advanced and carried for the duration of the litigation. As will be detailed in their forthcoming request for an attorneys' fees and costs award, Class Counsel diligently prosecuted this Action on a contingent basis and advanced all associated costs, with no expectation of recovery in the event the litigation did not result in recovery for the Settlement Class.

III.    PROPOSED SCHEDULE

Parties propose the following schedule. SA Exhibit 4 at p. 45.

| DEADLINE | EVENT DATE |
|---|---|
| Preliminary Approval Date | Date the Preliminary Approval Order is entered |
| Class Administrator to establish settlement website | 14 calendar days after the Preliminary Approval Date |
| Settlement Notice Date -- Claims Administrator to transmit notice (publication notice, internet notice, email notice) | 21 calendar days after the Preliminary Approval Date |
| Deadline for Plaintiff to file memorandum in support of fees, reimbursement of expenses and service award | At least 35 calendar days before the Objection Deadline |
| Objection Deadline | 60 calendar days after the Settlement Notice Date |
| Opt-Out Deadline | 60 calendar days after the Settlement Notice Date |

| Exclusion Deadline (Class Administrator to provide a final list of all Requests for Exclusion) | 7 calendar days after the Opt-Out Deadline |
|---|---|
| Settlement administrator to transmit list of all class members seeking exclusion | 7 calendar days from the Opt-Out Deadline |
| Deadline for Defendant to exercise right to terminate | 15 calendar days after the Opt-Out Deadline |
| Claims Deadline | 90 calendar days after the Settlement Notice Date |
| Deadline to file Motion for Final Approval | At least 25 calendar days before the Final Approval hearing and 14 calendar days after the Objection Deadline. |
| Final Approval Hearing | TBD but no sooner than 120 calendar days after the Preliminary Approval Date |

## IV.    ARGUMENT

When the Court is presented with a proposed settlement, it must first determine whether the proposed settlement class satisfies the requirements for class certification under Fed.R.Civ.P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *Id*.; Fed. R. Civ. P. 23; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998).

In order to grant preliminary approval, the Court must preliminarily determine whether the Settlement is fair, reasonable, and adequate. "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v. Serenity Transp., Inc*., 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021)**.** "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

The law favors the compromise and settlement of class action suits. *Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004) ("strong judicial policy…favors settlements"); see also *Hanlon* 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual

decision of the parties" when approving a settlement). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial . . . . The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225  (9th Cir. 1989).

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003)  "In the Ninth Circuit, courts use a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. That test includes the following eight factors, known as the *Hanlon* or *Churchill factors*." *Stewart v. Accurate Background, LLC*, 2024 U.S. Dist. LEXIS 49931, at *19-20 (N.D. Cal. Mar. 20, 2024) These factors include: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of Settlement Class members. *Hanlon*., 150 F.3d at 1026. "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525-526 (C.D. Cal. Jan. 5, 2004) (citing *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993)).

As discussed herein, the proposed Settlement readily satisfies each of the *Hanlon* factors along with the certification requirements under Fed.R.Civ.P. 23 and merits preliminary approval.

A.    The Settlement Satisfies the Hanlon Factors

   1.    The strength of Plaintiff's case; The risk, expense, complexity, and likely duration of further litigation;  The risk of maintaining class action status; The amount offered in settlement (*Hanlon* 1-4)

While Plaintiff remains confident in the strength of his claims, establishing Defendant's liability, whether at class certification, summary judgment or trial, presents significant legal and

factual challenges, with no certainty of success. Among other things, at class certification, Plaintiff must prove that reasonable consumers would find the "0 preservatives" representation material and thereafter establish damages through the expense of a hedonic regression and conjoint analysis. If the case is certified, Plaintiff will always run the risk of decertification. In terms of liability, Plaintiff may have to prove that the mere presence of citric and ascorbic acid are not enough to advance his claims, but that they acted as preservatives in Defendant's Products. This will require a battle of the experts which is both costly and fraught with risk. Even if liability were proven, Defendant would undoubtedly assert defenses as to loss causation and damages. *In re TracFone Unlimited Serv. Plan Litig*., 112 F. Supp. 3d 993, 999 (N.D. Cal. Jul. 2, 2015)( Defendant would had put forth "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery"). In the event of a victory at trial, Defendant would almost certainly appeal, resulting in prolonged litigation and the risk of reversal.

The $3,000,000 fund and the injunctive relief related to the label change provides significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation. It is within the realm of settlements of this kind, especially settlements at this early procedural juncture. Braun Decl. Ex. 3. Except for the Settlement, this case would require the expenditure of substantial additional sums of time and money, with no guarantee that any additional benefit would be provided to the Class.

Thus, given the costs, risks, and delay that would certainly occur in continuing to prosecute this lawsuit, the monetary and injunctive relief  is a significant recovery that is in the best interests of the Class. The Settlement strikes an appropriate balance between risk, cost, and delay, constitutes a meaningful recovery for the Class, and therefore warrants preliminary approval.

2.    The Extent of Discovery Completed and The Stage of The Proceedings;

Courts may consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. See *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). A settlement negotiated at an earlier stage in litigation however will not be denied so long as sufficient investigation has been

1   conducted. *Eisen v. Porsche Cars North American, Inc.*, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30,

2   2014) (finding that counsel had "ample information and opportunity to assess the strengths and

3   weaknesses of their claims and defenses" despite "discovery [being] limited because the parties

4   decided to pursue settlement discussions early on").

5        While formal discovery has not been undertaken, Plaintiff has conducted a significant pre-

6   litigation analysis of the matter, including conducting multiple analytical tests on Defendant's

7   Product, confirming the presence and amount of preservatives along with its pH level. Plaintiff has

8   retained an expert to opine on those analytics and the existence of the Product's preservation system.

9   Plaintiff also received confidential sales data from Defendant to assess potential class-wide damages

10  and therefore had enough information to properly evaluate the case both in terms of liability and

11  potential recovery. Braun Decl. ¶¶10, 12.

12              3.      The Experience and Views of Counsel

13

14       Courts give considerable weight to settlements reached by sophisticated parties with

15  experienced counsel as "parties represented by competent counsel are better positioned than courts

16  to produce a settlement that fairly reflects each party's expected outcome in  litigation." *In re Pac.*

17  *Enterp. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

18       Here, the Parties achieved a settlement after conducting a scientific analysis underlying the

19  merits of the case, a thorough review of relevant pricing data, a rigorous analysis of each Parties'

20  claims and defenses, and the likelihood of Plaintiff prevailing at class certification, summary

21  judgment and trial. Braun Decl. ¶¶10, 12. The terms of the Settlement are non-collusive and the

22  product of arms-length negotiations between experienced class action attorneys with the assistance

23  of a respected mediator and former jurist.

24       By engaging in a thorough investigation and evaluation of their claims, Plaintiffs' counsel

25  believe that the Settlement, for the consideration and on the terms set forth in the Settlement

26  Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of

27  all known facts and circumstances, including the risk of significant delay and uncertainty associated

28  with litigation, and various defenses likely asserted by ZOA. Respectfully, the Parties'

recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at \*5 (crediting the experience and views of counsel and the involvement of a mediator in approving settlement). Based on the foregoing, the proposed Settlement is both fair and adequate.[4]

### B.    The Settlement Satisfies the Mandates of Fed. R. Civ. P. 23(e)(2)

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.* 951 F.3d 1106, 1121 (9th Cir. 2020); see also *Newberg on Class Actions* § 11.41 ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). There is an "overriding public interest in settling and quieting litigation*," In re Lithium Ion Batteries Antitrust Litig*., 2020 WL 7264559, at \*13 (N.D. Cal. Dec. 10, 2020) (quoting *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976)), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) vacated on other grounds 688 F.3d 645.

Where a proposed settlement would bind class members, as is the case here, Fed.R.Civ.P. 23(e)(2) mandates the Court consider the following factors: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). As detailed below, the Settlement Agreement satisfies each of these factors and merits approval.

---

[4] The remaining *Hanlon* Factors are either not relevant (*i.e.,* no governmental participant) or unripe (*i.e*., the reaction of Settlement Class members).

1

2          1.          Class Representative and Class Counsel have adequately represented the Class

3

4          Class Counsel have diligently and zealously represented the individuals affected by this

Settlement, including drafting of complaint, the FAC, factual investigation, and zealous

representation at mediation. Class Counsel and the Class Representative prepared for and

represented Class Members at mediation to achieve an excellent result for all Class Members,

making informed decisions when negotiating the proposed settlement. Class Counsel have broad

experience litigating consumer class actions. As detailed above, in Counsel's view, the settlement

provides substantial benefits to the Settlement Class, especially when one considers the attendant

expense, risks, delays, and uncertainties of class litigation, which may include class certification,

summary judgment, trial, and appeal.

13          2.          The Settlement Agreement was negotiated at arm's length

14

15          Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was

negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg on*

*Class Actions*, §11.41; see also *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the most

closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig,* 1993

WL 330595, at *5 (D. Minn. June 2, 1993) (same). There is no doubt that the proposed settlement

was reached through arm's length bargaining. With sufficient information to make the process

meaningful, the Parties engaged in a formal, daylong, mediation before the Hon. Dickran Tevrizian

(ret.). The full day mediation resulted in a mediator's proposal, which, following additional

negotiations, ultimately resulted in the formal Settlement Agreement.

          The involvement of an independent mediator and the overall settlement process support the

conclusion that the Settlement in this case was negotiated at arm's length and not the result of

collusion. *See, e.g., Adams v. Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147, at *9 (N.D. Cal.

Oct. 29, 2007)("The assistance of an experienced mediator in the settlement process confirms that

the settlement is non-collusive."); *In re Netflix Privacy Litig.*, 2012 U.S. Dist. LEXIS 93284, at *7 (N.D. Cal. July 5, 2012).

        3.      The relief provided for the class is adequate

As detailed above, the Settlement provides all of the significant benefits described above to the Settlement Class without the risks, costs, and delays inherent in continued litigation, including the risk of a motion for class certification, a potential motion for summary judgment and trial, plus the potential for appeal. The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement. *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004). Litigating this class action through trial would be time-consuming and expensive. As with most class actions, the claims at issue are complex and risky. Without the Settlement, complicated further proceedings would be necessary, and such further proceedings would be hard fought and could potentially lead to appeals and even further delay. Although Plaintiff remains confident in the strength of his case, and is prepared to litigate it to conclusion, the risks are numerous and real. By contrast, the Settlement provides immediate cash benefits to the Settlement Class.

The methodology for class distribution of funds to Settlement Class Members is simple, straightforward and will be effective in ensuring payment to the Settlement Class. Reed Decl. ¶¶8-33.

Finally, District courts have the discretion to award attorneys' fees based on a percentage of the common fund or based on the lodestar method. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). Additionally, attorneys may recover their reasonable litigation expenses from a common fund. See *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Here, Class Counsel will apply to the Court for an award of attorneys' fees and expenses at least 35 days before the Objection  deadline, setting forth in detail their basis for the fees and expenses sought. Settlement Class Members will have sufficient time to review the fee request, which will be published on the settlement website. SA Ex.4. at p. 45.

1

2          4.      The proposed Settlement treats class members equitably

3          The Settlement does not grant improper or preferential treatment to Plaintiff or Class

4   Members.  The Settlement creates a common fund which will be used to cover costs and fees and

5   compensate Class Members. Under the allocation plan, each Class Member that submits a valid,

6   timely Proof of Claim will receive distribution from the Settlement Fund.  The only difference is the

7   cap on the monetary relief wherein those with proof of purchase may claim up to $150, while those

8   without such proof are limited to $10. This means that every Class Member will receive equal

9   treatment under the allocation plan. See *Opperman v. Kong Techs., Inc*., 2017 U.S. Dist. LEXIS

10  104507, at *20 (N.D. Cal. July 6, 2017) ("equal method of distribution is fair").

11          C.      Conditional Certification of The Proposed Settlement Class is Appropriate Under
                    Fed.R.Civ. P. 23
12

13          Before granting preliminary approval of the settlement, the Court should determine that the

14  proposed settlement class meets the requirements of Rule 23. See *Amchem Prods. v. Windsor*, 521

15  U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of

16  Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy,

17  predominance, and superiority, shows that certification of this proposed Settlement Class is

18  appropriate for settlement purposes.

19

20          1.      The Settlement Class is sufficiently numerous

21          Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

22  impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement is generally satisfied if the class

23  contains at least forty (40) members.  *See Hubbard v. RCM Techs. (USA), Inc*., 2020 WL 6149694, at

24  *1 (N.D. Cal. Oct. 20, 2020).  Any class consisting of more than forty members "should raise a

25  presumption that joinder is impracticable." 1 *Newberg on Class Actions* § 3.05, at 3-25 (3d ed. 1992).

26          Where the exact size of the class is unknown but general knowledge and common sense

27  indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F.

28  Supp. 351, 370 (C.D. Cal. 1982).  Here, purchasers of Defendant's Products during the relevant time

period are indisputably over 40 and are geographically located throughout the United States, making joinder impracticable. Therefore, the numerosity requirement is easily satisfied.

> 2. There are questions of law and fact that are common to the Settlement Class for settlement purposes

Rule 23(a)(2) is satisfied when there are questions of law or fact that are common to the class. To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (internal quotation and citation omitted). Class members' "common contention … must be of such a nature that it is capable of **class wide** resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).

The commonality requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019-1020. Where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas, Inc*., 536 F.3d 975, 978-79 (9th Cir. 2008). Commonality is a low hurdle, and class members need not present factual or legal situations that are "virtually identical." *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc*., 241 F.R.D. 85, 88 (D. Mass. 2007). Indeed, "[t]o satisfy Rule 23(a)(2) commonality, even a single common question will do." *Ruiz Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1133 (9th Cir. 2016).

Here, all Class Members were exposed to the same label representation. The legal and factual questions they face will be the same (*e.g.*, whether Defendant's Product contained citric and ascorbic acids; whether citric and/or ascorbic acid functioned as a preservative in Defendant's Product; whether the label representation "0 Preservatives" false, deceptive, and/or misleading).

These questions are capable of class-wide resolution and would "resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig*., 2019 WL 536661, at *6 (N.D. Cal. Feb. 11, 2019) (citation

omitted).  Defendant's conduct with respect to all Settlement Class Members was the same, and thus, the commonality requirement of Rule 23(a) is satisfied.

### 3.    Plaintiff's claims are typical of the Settlement Class

The typicality requirement of Rule 23(a)(3) is satisfied if the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members.  Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Plaintiff easily satisfies this standard as Plaintiff suffered the same harm as did all Settlement Class Members.  "Plaintiffs' claims are typical of the proposed class because they focus on the conduct of Defendants as to the ESOP as a whole and not on conduct specific to any particular Plaintiff."  *Hurtado v. Rainbow Disposal Co*., 2019 U.S. Dist. LEXIS 70062, at *21 (C.D. Cal. Apr. 22, 2019)**.**

### 4.    Plaintiff and Plaintiff's Counsel will adequately represent the interests of the Settlement Class

Adequacy is satisfied, because "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Plaintiff is an adequate representative because Plaintiff has no individual interests in this litigation that conflict with the best interests of the Class.  Moreover, Plaintiff has vigorously prosecuted the claims in this case and has been an active participant in this litigation.  Plaintiff understands the claims underlying the matter and his responsibilities as a class representative. Likewise, Plaintiff's Counsel have no interests antagonistic to the Class. They have extensive experience litigating and settling complex class actions and are well-qualified to represent the Settlement Class, and have done so vigorously. Thus, Plaintiffs and his Counsel satisfy the adequacy prong.

5.      The Class Satisfies the Requirements of Fed.R.Civ.P. 23(b)

After satisfying the requirements of Rule 23(a), a plaintiff must also show that at least one of the requirements of Rule 23(b) is satisfied before the court can certify the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Here, the proposed Settlement meets the requirements of Rule 23(b)(3). Pursuant to Rule 23(b)(3), the court must find that the questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The matters pertinent to a finding under Rule 23(b)(3) include: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. *Id*.

The objective behind the requirements of Rule 23(b)(3) is the promotion of economy and efficiency. *In re Tableware Antitrust Litig*., 241 F.R.D. 644, 651 (N.D. Cal. 2007) (citing F.R.C.P. 23(b)(3) advisory committee notes). When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Id*. "Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc*., 235 F.R.D. 474, 489 (E.D. Cal. 2006). In the context of a nationwide settlement the predominance inquiry should be considered under "three guideposts that direct the predominance inquiry: first, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011); see also *Wakefield v. Wells Fargo & Co*., 2014 WL 7240339, at *4 (N.D. Cal. Dec. 18, 2014) (adopting Sullivan's analysis that state law variations dissipate in a

1   settlement class). The predominance requirement of Rule 23(b)(3) is satisfied here because the

2   common questions present a significant aspect of the case and can be resolved for all members of the

3   Settlement Class in a single adjudication.

4        Class treatment is also a superior method of resolving this case, as required by Rule 23(b)(3).

5   There can be little doubt that resolving all class members' claims through a single class action is

6   superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no

7   advantage in individual members controlling the prosecution of separate actions. There would be

8   less litigation or settlement leverage, significantly reduced resources and no greater prospect for

9   recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the

10  Class demonstrate the advantages of a collective bargaining and resolution process.

11       Furthermore, the damages sought by each Class Member here are not so large as to weigh

12  against the certification of a class action. See *Smith v. Cardinal Logistics Mgmt. Corp*., 2008 WL

13  4156364, at *32-33 (N.D. Cal. Sep. 5, 2008) (finding that class members had a small interest in

14  personally controlling the litigation even where the average amount of damages were $25,000-

15  $30,000 per year). Individual damages here are far less. The sheer number of separate trials that

16  would otherwise be required also weighs in favor of approving the Settlement. See *Amchem*, 521

17  U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem

18  that small recoveries do not provide the incentive for any individual to bring a solo action

19  prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry

20  potential recoveries into something worth someone's (usually an attorney's) labor.") (citing *Mace v.

21  Van Ru Credit Corp*., 109 F.3d 338, 344 (7th Cir. 1997). Here, the efforts and funds required to

22  marshal the type of evidence, including expert testimony, to establish liability against a well-

23  financed corporate defendant would discourage**,** if not entirely prevent Class Members from

24  pursuing litigation on an individual basis. The superiority of proceeding through the class action

25  mechanism is demonstrable in this action. Through the class action device, Plaintiffs' counsel were

26  able to negotiate a valuable Settlement that, if approved, will provide Class Members with

27  immediate and significant monetary relief. For these reasons the Settlement also satisfies the

28  requirements of Fed.R.Civ.P. 23(b)(3).

D.    The Settlement Meets the Northern District of California Procedural Guidance For Class Action Settlements

| NDCA PROCEDURAL GUIDANCE | REFERENCES |
|---|---|
| (1)(a) Differences between the settlement class and the class proposed in the operative complaint | Memorandum at p.2 |
| (1)(b) Differences between the claims to be released and the claims in the operative complaint | None. SA§1.29 p. 6 |
| (1)(c) Class recovery under the settlement | SA §2.1 p. 7-9 |
| (1)(d) Other cases that will be affected by the settlement | n/a |
| (1)(e) Proposed allocation plan for the settlement fund | Reed Decl. ¶17 p. 5; SA §4.1.3-4 p. 9 |
| (1)(f) Estimate of the expected claim rate | Braun Decl. ¶9 |
| (1)(g) Reversion | Braun Decl. ¶11 |
| (2)(a) Settlement administrator, the settlement administrator selection process | Braun Decl. ¶¶5-7 |
| (2)(b) Settlement administrator's procedures | Reed Decl. ¶5 p. 2;  SA §6.1 p. 11-12 |
| (3)(a)-(e) Notice provisions | SA §1.2 p.12; Long Form Notice Ex. 1 p 24-35 |
| (4) Opt-Outs | SA §6.4 p 12-13 |
| (5) Objections | SA §6.5 p 13 |
| (6) Attorneys' Fees & Costs | SA §3 p 8 |
| (7) Service Awards | SA §3 p 8 |
| (8) Cy Pres Awardees | SA §4.8 p 10 |
| (9) Timeline | SA Ex. 4 p 45 |
| (10) CAFA | Reed Decl. ¶10 p. 3 |
| (11) Comparable Outcomes | Braun Decl. ¶9, Ex.3. |

V.    CONCLUSION

Plaintiff respectfully submits that the proposed Settlement is within the range of what is fair, reasonable, and adequate and merits preliminary approval. Thus, for the reasons set forth above, and

consistent with Fed. R. Civ. P. 23, Plaintiffs respectfully request the Court: conditionally certify the proposed Settlement Class; approve the proposed form and manner of notice to the Settlement Class; approve selection of Kroll Settlement Administration LLC as the Settlement Administrator; appoint Plaintiff Mikhail Gershzon as the Settlement Class Representative; appoint Michael D. Braun of Kuzyk Law and Peter N. Wasylyk of the Law Offices of Peter N. Wasylyk as Settlement Class Counsel; and set a hearing date and briefing schedule for Final Approval of the Settlement.

DATED: May 9, 2025                              Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**

Peter N. Wasylyk
**LAW OFFICES OF PETER N. WASYLYK**